O. C. HILL, Receiver of the Farmers' State Bank of Clearfield, Iowa, Appellee, v. FRED D. WAIGHT, MARGARET Y. WAIGHT and L. H. YOUNG, Appellants.

**Negotiable Instruments:** PAYMENT: EVIDENCE. The defense of payment of a note by the transfer of property is of an affirmative character and must be established by a fair preponderance of the credible evidence. Evidence held insufficient to show that property transferred by the principal maker of the note was in payment of the same rather than as security.

*Appeal from Taylor District Court.*—HON. H. M. TOWNER, Judge.

THURSDAY, DECEMBER 17, 1908.

ACTION begun at law to recover upon a promissory note. Defendants having pleaded an equitable defense, the cause was transferred to the equity calendar for trial.

The court found for the plaintiff, and the defendants appeal.—*Affirmed.*

*C. M. Hoffman, W. E. Miller* and *Mitchell & Hunter,* for appellants.

*William M. Jackson,* for appellee.

WEAVER, J.—The defendants admit making the note sued upon, but allege that it was paid and discharged by the said Fred D. Waight, who was the principal debtor, by transferring and conveying to the bank or to its cashier, for the use of the bank, a tract of land in the State of Missouri, and they ask that said note be cancelled and surrendered to them, or that plaintiff be required to account for the land so conveyed. The record fairly tends to disclose the following facts: The business of the Clearfield State Bank was under the immediate charge and management of its cashier, W. A. Ferren, and in the spring of 1902 the defendant Fred W. Waight desiring to enter business as a retail merchant at Chariton and being without capital, he applied to Ferren, who was his wife's brother, for assistance. Ferren advanced him the sum of $1,600 from the funds of the bank, and took from him the note in suit of himself, his wife, and Young, who is another brother-in-law. The business in which Waight embarked proved to be a losing one, and Ferren made him additional advances until in April, 1903, his indebtedness to the bank exceeded $3,000. Meanwhile he had also become indebted to the National Bank of Chariton for the sum of $1,800, which was then past due, and for other sums aggregating about $700 on unmatured paper. The latter bank becoming insistent upon payment or security, Waight secured that indebtedness by a chattel mortgage on his stock of goods, being all of the property of which he was possessed, which mortgage the bank received, under

an agreement to withhold from record for a short time, until Waight could consult with Feren. On notice from Waight Ferren came to Chariton. In the ensuing negotiations between the three parties the attorney for the Chariton bank suggested that, as his client had a first lien or claim on the stock of goods, the Clearfield bank could best protect itself by taking up the mortgage debt, and to this proposition Ferren agreed, on condition that Waight would turn over the stock of goods. Waight accepted the condition. In closing the deal Ferren stated that his bank was at that time short of ready cash, and proposed to sign the notes of Waight then held by the Chariton bank, agreeing to take them up in ·a short time. This being granted, he subscribed the name of his bank, by himself as cashier, to the several notes of Waight which had been secured by said mortgage. Thereafter Ferren made payments on the several notes to the Chariton bank in various sums to an aggregate amount of nearly, or quite, $2,500. These payments were made in the form of drafts or checks drawn by the Clearfield bank upon its correspondents. At the time Waight undertook to turn his stock of goods over to Ferren or the Clearfield bank it was arranged between him and Ferren that, until some disposition could be made of said stock, he should continue in the possession and management of the goods and business, and account therefor to Ferren at regular intervals, but he seems to have made use of the income so derived from the business in settling other debts and expenses, and nothing, or substantially nothing, was applied upon the claim which Ferren held or represented. At the time of said transaction, in April, 1903, no inventory was taken of the stock of goods, but Waight testifies that in his judgment it was worth about $7,500. In the summer of 1903 an agent or broker approached Waight, with an offer to exchange an equity in a tract of Missouri land for the goods. Waight communicated to Ferren the offer,

and the latter advised its acceptance. The title to the land was taken in the name of Waight, who afterward executed a deed therefor, in which a blank was left for the insertion of the name of the grantee, and delivered it to Ferren, who filled the blank with his own name. The equity in the Missouri land was exchanged for another stock of goods in Kirksville, Mo., and this in turn was exchanged for other property, until finally, at the institution of this suit, the sole remnant and outcome of the property turned over or conveyed by Waight to Ferren was represented by a naked and valueless equity in a mortgaged lot and building in Chariton.

It is the contention of the defendants that by and through the aforesaid transactions the indebtedness of Waight, whether due to the Clearfield bank or to Ferren in his individual capacity, was fully paid and discharged. The plaintiff takes issue upon this claim, denies the facts alleged, and denies the authority of Ferren as cashier to accept the payment of such claims in anything but money. The pleadings raise no issue of fraud, although it appears, more or less directly in evidence, that Ferren concealed the greater part of these dealings from the directors of his bank, forged one or more renewals of the note in suit, and finally absconded, leaving the bank in such condition as to require the appointment of a receiver to close up its business. Much of the argument of counsel is directed to the question of the cashier's authority; and, if its solution were necessary to the disposition of this appeal, the case might possibly present some debatable questions for our consideration. Ferren appears to have been given by the board of directors greater license and broader discretion in the management of the business than is ordinarily exercised by cashiers of banks having other executive and managing officers. He seems to have been, by common consent, if not by express grant of authority from the directors, allowed to conduct the bank's business, including the col-

lection and security of claims, very much according to his own judgment, subject to an irregular and perfunctory supervision by the board, thus presenting a situation affording some plausible ground for the position taken by the defendant's counsel upon this phase of the case; but a careful consideration of all of the facts presented by the record in the case leads us to the conclusion that defendants have failed to make good their allegation that Ferren took the property in payment of their debt. This defense is of an affirmative character, and must be sustained by a fair preponderance of the credible evidence. It is supported almost wholly upon the testimony of the defendant Fred D. Waight, with but little corroboration from other sources, and the claim made by him is so extraordinary, so out of harmony with rational business methods, and so inconsistent with other facts admitted by him that we are not disposed to give it controlling weight, but find that the transfer of the stock of goods to Ferren, and the subsequent conveyance to him of the. Missouri land, was intended at most as mere security for Waight's debt to the bank, and not as a payment or discharge thereof. Indeed, while swearing in a general way that he turned out the goods in payment, yet when required to answer the specific question, "What did the cashier say if you would turn the stock of goods over to him?" He replied, "He would take this to pay out my indebtedness with." After the conveyance of the Missouri land Waight remitted money to Ferren to pay interest upon the mortgage incumbrances. In his subsequent correspondence with Ferren he clearly recognizes the continuing existence of his indebtedness. He himself conducted the negotiations for the trade by which the goods were exchanged for land. Indeed it was not until more than two years had passed that he seems to have arrived at the conclusion that his debt had been discharged by said transaction, and then for the first time wrote Ferren asking for a return to him, not of all

his written obligations to the bank, but of "the note Lou Young signed with me." It was the natural and, within limits, the proper thing for Ferren to take the property as security and make the most he could out of it. It was the unnatural, irrational and unbusinesslike thing for him to accept it as full payment, and in addition thereto assume to pay the prior heavy incumbrance, and it requires something more than Waight's halting and inconsistent assertions to the contrary to justify the court in releasing defendants from their obligation to pay the plaintiff's demand. · The apparent explanation of the dealing between Waight and Ferren seems to be that the latter, out of his desire to aid his brother-in-law, advanced him money from the bank upon inadequate security, and in attempting to keep the debtor afloat and avoid the loss of the sum already advanced, he hazarded more, until the point was reached where he sought to secure himself from blame, and the bank from utter loss, by taking the title to the mortgaged stock of goods and trying to convert them, or allow Waight to convert them, into money with which the debt might be paid or materially reduced. As often happens, 'it was too late to arrest the momentum of the fall in Waight's fortunes, and the value of the security, after a few trades and exchanges, was reduced to zero. The note to the bank remains unpaid, and no ground is shown for releasing the makers from their obligation to pay it.

Finding, as we do, that under the issue presented by plaintiff's denial of defendant's affirmative defense the latter have failed to sustain the burden of proof, we think it unnecessary to prolong this opinion to consider the abstract question as to the extent of the cashier's power to accept anything but money in payment of claims due the bank.

Determination of other questions discussed by counsel not being necessary for the decision of the appeal, they

will not be further discussed in this opinion. Some issues not mentioned herein were raised by the joint and several answers of the appellants, but they have no substantial support in the record, and are not urged in argument.

The decree entered by the district court effects substantial justice, and it is therefore *affirmed*.